If it pleases the court, I am Appellant Jerold M. Gorski. The district court judges below denied me due process by ignoring four things. First, my declarations, all made under penalty of perjury. Second, documents that corroborate my testimony. Third, my objections to the opposition party's evidence and claims. Fourth, the legal authority directly on point. I am entitled to proper production of documents in a jury trial because there are many genuine issues of fact. The government's judgment is clearly inflated because it includes an error of $148.81, as evidenced by Great Lakes December 16, 1998 letter, which is found in the record, court record, at 89-1, Exhibit 8. Compare that to Exhibit 7, which is ECMC's March 16, 1999 letter, and there's clearly an overcharge of $148.81. In addition to that, they tacked on collection fees during my bankruptcy, or after my bankruptcy, but waited until my bankruptcy was through in order to even address payoff, properly address it. But for these overcharges, the $148 and the nearly $5,000 in collection fees, and I put that in quotes because they did nothing to try to collect, they obstructed me in paying off. But for these overcharges, the opposition party's refusal to allow payoff, any actual amount actually owed could have and would have been paid during my bankruptcy. The record shows that I did everything to get this error corrected, but Great Lakes transferred the debt to ECMC without notice and during my bankruptcy. Let me ask you this. The alleged actions by the debt collection agencies occurred in 1998 and 1999, and you knew of those actions at that time. Why aren't your claims against the agencies now barred by the appropriate statute of limitations? Several reasons, Your Honor. First, take a look at COIT, 489 U.S. 561. The government there said administrative remedies that are inadequate need not be exhausted based on green versus U.S., and also said it allows the FSLIC to delay administrative processing indefinitely while the statute of limitations tolls. So in that case, the same thing happened. The party with all the power waited, believing that my claims would expire. I wasn't able to bring my claims. There's no state claim. Under federal law, there is no specific claim in HEA to correct this, and this is what the opposition parties pointed out to me. There's nothing. Take a look at one of my letters that I sent to ECMC threatening a consumer action. They laughed at me. Can't bring it. You also can't bring a claim under the Administrative Procedures Act or the Fair Debt Collections Practices Act, at least in the Ninth Circuit. So there was no way I could bring this earlier. Plus, consider what they did. All ECMC did was send me a letter saying there's an inflated amount and not let me pay off. What do I do? I bring an action for accounting? They say there's no such thing. What's the full amount they say you owe right now? It's $35,000-something is the judgment. Have you attempted to mediate this with them? We have, Your Honor. The court ordered that the parties—I think this was before ECMC and Great Lakes were involved, but I could be wrong. But in any case, ordered the parties to meet to try to settle it, and the government was adamant that I was to pay whatever was demanded, period. The government no longer holds these loans. It's these two credit corporations. I think it's the other way around. Now the government owns it, and the other two, they're servicers. Right. You know, and the interesting thing about this is that there are several entities that own this. I've got documentation that Sally May owned this at one time. So there's a transition from Great Lakes to ECMC during my bankruptcy, but it looks like it went to Sally May first and then to ECMC. But the date that it was transferred is all up in the air. There's no clarity on that. Great Lakes told me during my bankruptcy that it happened during my bankruptcy, and I didn't even get notice of this. And that's the strange thing about these cases with guarantors. They don't provide proper notice. It's not like a bank where you get monthly statements or quarterly statements or even annual statements. They only send you what they want to. They control everything. You know, I've talked to lots of ECMC victims and victims of Great Lakes as well, and they tell me they're basically acting as the mafia, whatever they say. So what do you think you owe? That is still to be determined, but I'll tell you this. Well, you've had a long time. What do you think you owe? During my bankruptcy, I would have consolidated and paid off the amount that they asked for, less than $148,000 and less than $5,000 in collection fees. However, since they refused to do that, they've been tacking on more collection fees, more interest, and not allowing me to pay off. And I don't, you know, they do this to so many people. This is a racket that's national. This is harming people all over, which goes to my motion to augment. Did you offer to pay it in full, absent the $148, or are you offered to make payments? Oh, no, I offered to pay it in full. I tried to consolidate through the Ford program with the Department of Education or get funds myself to pay it off, and they refused. They would not, and they all pointed at one another. Department of Education said ECMC wasn't providing verification of the loan. ECMC said they did. They don't copy borrowers on that. You never get to see the communication between them, and very few of those documents have been produced, all the communications between them. And I contacted the legal counsel for the Department of Education. She worked with me for months after my bankruptcy and then passed it on to the newly started Ombudsman's Office. And the Ombudsman's Office said, oh, Don Skanath already handled that. You're done. And ECMC said, you don't get a hearing. And you can see in their documentation that they round-filed everything I sent them. There's a notation from April 6, 1999 that's quoted in the documents in below where ECMC says all his documents go to SSU file. Ignore it. This is not right, and this gets to my motion to augment, and I really urge the court to look at both of those. They're in the docket in the Ninth Circuit here at 39 and 80. They include not only the first and third pages from a letter I received from Don Skanath, again corroborating my testimony, my testimony under oath, much of which was uncontradicted by these guys, showing that I was in contact with the Department of Education to try to resolve this and that they wouldn't. And there are more correspondence that have not been produced and more that needs to be testified on this. So what's your strongest counterclaim against the United States that is not barred by sovereign immunity? I don't know if it would be Bivens or just the fact that they're demanding more than what's owed. The thing that I urged Mr. Whittlesley is that he do a 180 on this case, and instead of pursuing me, pursue ECMC and help all the victims out there. And can I address these motions to augment as well? Well, you only have two minutes, so if you want to save any time for rebuttal, you can do whatever you want with your two minutes, but that's all you have. Please look at those eight declarations in 39 and 80. They're victims just like I am, and they've gone through the same things. They corroborate what I'm talking about. This is a very big case. This is as big as Enron. The lower court made fun of me for saying that. This is a case where they do whatever they want to. They act like the mafia. And there should be justice here for people being made to pay again and again on the same loans, on being extorted on amounts they don't owe. These disputed issues, genuine issues of fact, should always go to a jury. I'll reserve my time. Thank you. May it please the court, my name is Assistant United States Attorney Brent Whittlesey, and I'm here on behalf of the plaintiff. The debtor in this case acknowledges that he financed his law school education and his college education, at least in part with federally guaranteed student loans. And he admits that he defaulted on his obligations many years ago, probably as early as 1999, and that he hasn't made payments on those loans, at least in that many years. In order to establish the defendant's liability, the government was required to show three elements. First, the execution of promissory notes by Mr. Gorski. Secondly, his default. And third, the amount of the outstanding indebtedness. Well, let me ask you this. In the briefs before the court, Mr. Gorski alleges that there was $148.81 interest overcharge in 1998-99. Why does this not raise a question of fact as to the amount owing on the promissory notes? Because Judge Callahan, he didn't raise it in the district court. We were surprised to see that, actually, in his briefing in this court. Because he never claimed what the amount of the overcharge was, what amount he owed. You notice that he wouldn't answer your question as to how much money he actually owes. So- Well, how much money do you think he owes? The amount set forth in the judgment. In the judgment. Yes. Okay. But that was not raised in the district court, And we recommend that the court consider it to have been waived as a result of not having been waived. Raised, rather. When we established our prima facie case, the burden shifted to Mr. Gorski to show how much to present evidence regarding the amount of the indebtedness. And he simply didn't do that. He raised vague allegations about conspiracies and mafias and bigger than Enron and so forth. And never provided the district court with any computation of what it was that he thought he owed. We believe that under these circumstances, the judgment of the district court should be affirmed. Okay. All these years, they've been charging him 8% interest, even when the interest rate was like at 1%, 2%. Yes, Your Honor. Do you see any problem with that? No. Why? Because that's what the contract was. And is it the government's policy across the board not to negotiate or compromise on student loans, or is it just with Mr. Gorski? It's not with Mr. Gorski, and it's not with any other student loan debt, Your Honor. We would be pleased to receive from Mr. Gorski a reasonable repayment program, a proposal from him as to how he wants to clear his student debt. And if he wants to propose to us that some of that interest be dialed back, that would be fine too. But we don't get that from Mr. Gorski. What we get is allegations about how abused he's been in this whole process. We actually recovered in March of this year $504 from Mr. Gorski pursuant to a treasury offset of amounts that were owed to him. So does he still owe the amount that's in the judgment? That's $504, Your Honor, yes. And why is the government not willing to have a Ninth Circuit mediator sit down and try to work out the schedule? I've never been approached about having a mediation in this case, Your Honor. Okay, so when Mr. Gorski said you – when I asked earlier about the mediation, he said that it failed or something? I don't recall that part of the case, Your Honor. I don't think that there was any mediation order. Would the government be willing to mediate this in front of the Ninth Circuit mediator? I'd be happy to meet with the mediator and talk about it. And Mr. Gorski? Certainly. But failing some reasonable proposal from Mr. Gorski, the court, in our estimation, should affirm the judgment. And I won't take any more of the time that my colleagues have. Thank you very much. All right. Thank you. Morning. Charles Messer for Educational Credit Management. Two points. One, the claims against educational credit are clearly barred by the statute. The allegations of wrongful conduct stem from 1999. The filing was in 2011, and the district court properly dismissed the claims on the basis of the statute. Second, we briefed – even if somehow the court is convinced that somehow a statute was told, the state law claims are clearly preempted by Ninth Circuit precedent. The Brannon case, the Che case, we briefed that at pages 29 to 33 of our brief. And the facts of this case show why those preemption cases still have continuing vitality and importance. Because Mr. Gorski obtained a loan in the state of Wisconsin. Students can move anywhere in the country they wish. He moved to California. Now alleges that somehow our liabilities are governed by California state law. It could be the law of any state. Any student could say, well, it's Alaska law. But the Ninth Circuit, the secretary of education, adopted regulations saying we need uniform national standards for collection of federally insured student debt. This circuit and every other circuit has said, yes, we have uniform standards. State law claims are preempted. And so all these claims are preempted. So on that basis – So are you – just so I – are you Great Lakes Higher Education? No, we're Educational Credit Management. Oh, okay. It's EMC in the briefs. Okay. Did either Great Lakes or ECMC have any contact with Mr. Gorski between 1999 and 2011? None. The last contact was in October 1999. Okay.  Thank you. Good morning, Your Honors. I'm Mitchell Albert. I'm the attorney for the Great Lakes entities. Did you have any contact between 1999 and 2011? No. The last contact for Great Lakes I think was March of 1999. And I would just say a couple of things. Mr. Messer's comments about the statute and preemption apply to Great Lakes as well. And with respect to if there's some dispute of fact as to the amount owed, that has nothing to do with Great Lakes or ECMC in terms of dismissal of the counterclaims. And with respect to Mr. Gorski's comments about declarations being ignored, that also has nothing to do with the motions to dismiss, which were on the pleadings. With that, I would – I have a question. You're not owed any money at the moment by Mr. Gorski? No, Your Honor. Who is owed money by Mr. Gorski? The United States. So what was your role in this if you were, for a time, the servicers? The United States contracted with you to send out collections? We're the guarantor. You're the guarantor. The guarantee agency. The guarantee agency. Okay. But no longer, not since 1999? Correct. Okay. So that was the end of Great Lakes' involvement. Thank you. Thank you, Your Honor. This is a three-headed monster. Great Lakes was not just the guarantor. They were also the servicer. They're two Great Lake entities, so that's just simply not true. They're the guarantor and the servicer. This is a simple debt issue where Great Lakes transfers it to Sallie Mae, that transfers it to X, that transfers it to Y, that transfers it to ECMC, that sells it back to the government. They're a three-headed monster. It's one issue. They all point to each other and say, the other one's to blame, not me, the other one. Oh, statute of limitations. And I'm not statute of limitations. Look more at Corman that I cited both in the lower court and the appellate briefs, Corman I and II, that deals with statute of limitations accrues after the legal harm and evidence of causality are obtained. I don't have that. I didn't have that in 1999. I didn't know who was lying about who did or did not verify the debt to the Ford program. That simply wasn't provided to me. So that evidence of causality, I didn't have it. It's also a continuous violation rule that applies. They continue to demand more than what was owed from 1999 to present. That never changed. The other two parties say, I think, that they're not making any demand of you, that you don't owe them anything. Is it only the government that is claiming money from you now? Apparently. That's the evidence that they put in below. I have no personal knowledge of that. You know why? Because they never provide me notice. All right. But if they have represented to the court that they are not seeking any money from you, you can rest comparatively easy, I would think, on that question. You know, the problem How much is the government claiming from you now? $35,000. Let me try Judge Callahan's question again. Is there any amount that you agree you owe the government? Yes, I agree I owe the actual amount owed. Now, one of the things that was misrepresented here is that I admit to that all these application pages became loans. Actual amount owed. What does that mean? Here's what happened. During my bankruptcy, I'm trying to clean up what I owe. I don't have perfect records, and I'm trying to figure out what I owe. None of them will provide me any documentation. So you don't know what your actual amount owed is, but it's some vague concept out there. Well, correct. I mean, imagine yourself going to a restaurant and saying, put it on my bill. And you go there several times over the course of many years. And suddenly they say you owe much more than you think you owe. And they come up with receipts. And some of those receipts show your name, but it doesn't look like your signature. Some of the receipts come up, and they're not originals. Not a single one of the receipts is an original. Okay, so you don't have an actual amount owed then? No, I do not. And that's not because I'm being obstreperous. It's because I don't know. I don't have that. There's no way for me to provide that. That's why I need their documents. That's why when Judge Wu orders them to provide a payment history and they refuse, and the district court refuses to enforce that order, that's a rebound. So you would not be able to tell a mediator what your actual amount owed is? I could tell them what I was willing to do during my bankruptcy. Well, but you just said you stepped back. You just said I would pay my actual amount owed. And that's different than what I was willing to do. I'm like many of the other ECMC victims I've talked to. We all want to pay what we owe, but we don't want to overpay. But how do you define that? How do you define what you owe? Well, imagine this for yourself. You take out loans, as he said, during undergraduate and graduate school. Which I did, I did. And I paid them all off in 10 years. I had a little booklet and paid them all off once a month. And you make many payments. And you get into financial trouble. You go through bankruptcy. So you think you paid off some of this? Oh, much of it. Much of it. And, you know, the interesting thing is with my guaranteed student loans, the lenders cooperated. They're like, yeah, what documents do you need? And they provided everything, and I showed them a couple errors. I paid it off, and we were done. What they do instead is they will manufacture loans. No one stops them. There's nothing to stop them. As they all argue, there's no cause of action. Everything's preempted. There's nothing you can do to correct this, which is why you have to look at those declarations where other people are saying. Are you willing to go to mediation and see if they can produce a record of what you paid or didn't pay and work it out? Absolutely. And the court did not order a mediation with a mediator, but the court ordered the parties to discuss settlement, and we did. And in that, Mr. Whittlesley said, you've got to pay what you owe, period. Are you aware we have a Ninth Circuit mediation program with a mediator? I was not, Your Honor. Okay. All right, I think we have your arguments in mind. No, there are many more things I'd like to say. Well, no, but your four minutes is over. There were misrepresentations of the record here. Your time is expired by over half. But they've misrepresented the record. Could I just? Well, you can go ahead with a complete record, and everything should be in there. I've brought up everything below. I've not waived any of these arguments, and I really urge the court to look at these other victims. They've put in declarations that are notarized. We have whatever you submitted, and a term for our argument is more than expired. May I have a hearing on that motion to augment the record? No, no, we will resolve that motion. All right. Thank you very much, Your Honor. I apologize. The case discharges will be submitted. The next case for our argument is United States v. McCready.
judges: REINHARDT, WARDLAW, CALLAHAN